[Cite as *State v. Woodward*, 2018-Ohio-2402.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106300

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MAURICE WOODARD**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-612806-A and CR-17-614273-D

**BEFORE:** Kilbane, P.J., McCormack, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 21, 2018

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
400 Terminal Tower
50 Public Square
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Kevin E. Bringman
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Maurice Woodard ("Woodard"), appeals his guilty plea and sentence for burglary, grand theft, having weapons while under disability ("HWWUD"), and receiving stolen property ("RSP"). For the reasons set forth below, we affirm.

**{¶2}** In January 2017, Woodard was charged in a two-count indictment in Cuyahoga C.P. No. CR-17-612806-A with one count of burglary and theft. The indictment alleged that Woodard burglarized and stole electronics from a home located in Cleveland, Ohio, in October 2016.

**{¶3}** In March 2017, Woodard was charged in a nine-count indictment in Cuyahoga County C.P. No. CR-17-614273-D. Woodard was charged with two counts of burglary, three counts of grand theft, theft, HWWUD, improperly handling firearms in a motor vehicle, and RSP of a motor vehicle. This indictment also charged three codefendants: Diamond Robinson ("Robinson"), Nicholas Bacon ("Nicholas"), and Gerald Bacon ("Gerald").[1] This indictment alleged that in February 2017, Woodard, Robinson, Nicholas, and Gerald burglarized two homes in Lakewood, Ohio.

**{¶4}** Through discovery in Case No. CR-17-614273-D, it was determined that Woodard committed the first burglary in Lakewood with codefendants Robinson and Gerald. Immediately after the burglary, the three men loaded stolen items into a vehicle that had been reported stolen about a week prior, and then drove to a pawn shop in Cleveland.

---

[1] Codefendant Diamond Robinson's appeal is a companion appeal to the instant case. *See State v. Robinson,* 8th Dist. Cuyahoga No. 106329.

**{¶5}** The next day, Woodard, Robinson, and Gerald burglarized a second Lakewood home with an additional fourth codefendant, Nicholas. After the second burglary, the four men returned to the same pawn shop where they were apprehended by Lakewood police.

**{¶6}** Lakewood police were at the pawn shop to investigate a tip from the owner of the home that Woodard, Robinson, and Gerald had burglarized the day before. Earlier that day, Woodard returned to the pawn shop alone to sell the laptop and other stolen electronics. The homeowner was able to track the laptop when Woodard turned it on at the pawn shop.

**{¶7}** Between the two Lakewood homes, the codefendants stole cash, multiple pieces of jewelry, a number of electronics, and multiple firearms. Two of the three firearms as well as "over a thousand rounds" of ammunition stolen from one of the Lakewood homes were never recovered. After his arrest, Woodard refused to cooperate with police by declining to provide information about the location of the firearms and ammunition.

**{¶8}** In August 2016, Woodard entered guilty pleas in both cases pursuant to plea agreements with the state. In Case No. CR-17-612806-A, Woodard pled guilty to an amended count of burglary. In Case No. CR-17-614273-D, Woodard agreed to plead guilty as part of a package plea deal with his codefendants. Woodard pled guilty to two counts of burglary, as well as a count each of grand theft, HWWUD, and RSP of a motor vehicle. At the plea hearing, the trial court referred Woodard to the probation department for a presentence investigation report ("PSI"), and set the matter for sentencing.

**{¶9}** At the September 2017 sentencing hearing, the state advised the trial court that it was seeking maximum, consecutive sentences, citing Woodard's continued refusal to cooperate with law enforcement and provide information to assist in recovering the missing firearms and ammunition.

{¶10} In Case No. CR-17-612806-A, the trial court imposed a 36-month prison term for the single burglary count. In Case No. CR-17-614273-D, the trial court imposed an 8-year prison term on each of Counts 1 and 4 (burglary), a 12-month prison term for Count 3 (grand theft), a 36-month prison term for Count 7 (HWWUD), and an 18-month prison term for Count 9 (RSP of a motor vehicle). The trial court ordered Counts 1, 3, and 4 to run consecutively to each other and concurrently with Counts 7 and 9 for a total sentence of 17 years. The court ordered the 36-month prison sentence imposed in Case No. CR-17-612806-A to be served concurrently with the 17-year sentence.

{¶11} It is from this order that Woodard appeals, raising the following four assignments of error for our review.

### Assignment of Error One

The trial court erred when it did not have a full plea colloquy with Woodard, pausing to further explain some of the important rights he was waiving by pleading guilty.

### Assignment of Error Two

The trial court erred when it imposed maximum sentences.

### Assignment of Error Three

The trial court erred when it ordered restitution in the amount of $15,000 without supporting evidence. This constituted plain error.

### Assignment of Error Four

The trial court erred when it did not make the necessary findings, and engage in the correct analysis, to impose consecutive sentences.

{¶12} For ease of analysis, we will address Woodard's assigned errors slightly out of order.

### Guilty Plea

**{¶13}** In the first assignment of error, Woodard challenges the validity of his plea. He claims the trial court failed to comply with Crim.R. 11 because the trial court "should have done more to fully explain [to him] the rights" he was waiving by entering his guilty plea.

**{¶14}** Crim.R. 11(C)(2) governs the trial court's acceptance of guilty pleas in felony cases. It provides, in relevant part:

(2) In felony cases the court may refuse to accept a plea of guilty * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶15}** The purpose of Crim.R. 11(C) is to convey to the defendant certain information so that he or she can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

**{¶16}** We review a trial court's compliance with the requirements set forth in Crim.R. 11(C) under a de novo standard of review. *State v. Darling*, 8th Dist. Cuyahoga No. 104517, 2017-Ohio-7603, ¶ 17. We review the totality of the circumstances surrounding the defendant's plea to determine whether it was entered into knowingly, intelligently, and voluntarily. *State v. Alvelo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 21 (8th Dist.).

**{¶17}** A trial court must strictly comply with Crim.R. 11(C) where constitutional rights are involved. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Crim.R. 11(C)(2)(c) requires the trial court to advise the defendant of the following constitutional rights: the right to a jury trial, the right to confront one's accusers, the privilege against compulsory self-incrimination, the right to compulsory process to obtain witnesses, and the requirement that the state must prove the defendant's guilt beyond a reasonable doubt. *Id.* at _ 19. With respect to the nonconstitutional notifications required by Crim.R. 11(C), substantial compliance is sufficient. *Id.* at _ 14.

**{¶18}** Here, Woodard concedes that the trial court informed him of his right to a jury trial, his right to subpoena witnesses on his own behalf, and the requirement that the state must prove his guilt beyond a reasonable doubt. He argues, however, that the trial court should have done more to explain these rights to him.

**{¶19}** Specifically, Woodard argues that, as it relates to his right to have compulsory process for obtaining witnesses in his favor, the trial court should have further explained that it would have witnesses forcibly brought to court if they failed to appear and that "a witness must testify truthfully unless they assert a recognized privilege."

**{¶20}** This court has held "'a trial court need not specifically tell a defendant that he has the right to compulsory process, it must nonetheless inform a defendant that he has the power to force, compel, subpoena or otherwise cause a witness to appear and testify on the defendant's behalf.'" *State v. Smith*, 8th Dist. Cuyahoga No. 92320, 2009-Ohio-5692, ¶ 35, quoting *State v. Cummings*, 8th Dist. Cuyahoga No. 83759, 2004-Ohio-4470.

**{¶21}** Here, the trial court followed our holding when questioning Woodard about his understanding of this right: "Do you also understand you have the right to use the Court's

power of compulsory process through a subpoena to compel witnesses to come to court to testify on your behalf."

**{¶22}** Woodard further argues that the trial court should have explained not only that the state is required to prove him guilty beyond a reasonable doubt, but also that "the [s]tate would have to independently prove each and every element of each crime beyond a reasonable doubt, and if the [s]tate should fail to prove any element, then Woodard would be found not guilty." Woodard also contends the trial court should have defined "reasonable doubt" for him and explained the meaning of the burden.

**{¶23}** Woodard contends the trial court's advisement of his right to a jury trial was deficient because it "did not explain that a jury would consist of twelve citizens, and that [their] verdict would have to be unanimous to find him guilty." He argues the trial court should have advised him of his attorney's role in jury selection, his ability to excuse jurors using either peremptory challenges or challenges for cause, and the principle that jurors could not be excused on the basis of race.

**{¶24}** We find these arguments unpersuasive. Crim.R. 11 does not require the trial court to advise a defendant of the legal principles Woodard cites.

**{¶25}** Our independent review of the record demonstrates that the trial court strictly complied with Crim.R. 11(C) in advising Woodard of his constitutional rights. The Ohio Supreme Court has recommended to the trial courts of this state that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty." *Ballard,* 66 Ohio St.2d at 479, 423 N.E.2d 115.

**{¶26}** Here, the trial court strictly adhered to the method prescribed by *Ballard* when informing Woodard of his constitutional rights. The trial court used the language of Crim.R. 11(C) and stopped after each right to confirm Woodard's understanding. Moreover, the trial court offered to further explain any right that Woodard did not fully understand. The trial court explained:

> THE COURT: I am going to ask you all [referring to Woodard and his codefendants] the same questions. If there is something I ask that you don't understand, let me know and I will explain it to you.
>
> * * *
>
> THE COURT: Do you understand that by entering a plea of guilt you will be giving up certain [c]onstitutional rights?
>
> * * *
> DEFENDANT WOODARD: Yes, sir.
>
> * * *
>
> THE COURT: I am going to go through your rights with each of you and ask if you do understand your rights. When I ask if you do understand, answer yes out loud. If you don't understand just say no. Feel free to interrupt me at any point and I will explain it to you.

**{¶27}** The trial court then recited each constitutional right listed under Crim.R. 11(C)(2)(c), and paused to give Woodard an opportunity to confirm his understanding or inquire further. Woodard replied that he understood each of these rights, and did not ask the trial court for further explanation.

**{¶28}** In light of the foregoing, we find the trial court strictly complied with Crim.R. 11(C) when advising Woodard of the constitutional rights he was waiving by entering a plea of guilt. Accordingly, the first assignment of error is overruled.

<u>Sentence</u>

**{¶29}** In the second and fourth assignments of error, Woodard challenges his sentence. Our standard of review for felony sentences is governed by R.C. 2953.08(G)(2), which states, in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4).]
>
> (b) That the sentence is otherwise contrary to law.

**{¶30}** Thus, under the plain language of R.C. 2953.08(G)(2), we may vacate or modify a felony sentence on appeal only if we determine by clear and convincing evidence that the record does not support the trial court's findings under the relevant statutes _ in this case, R.C. 2929.14(C)(4) _ or that the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, _ 1.

**{¶31}** Clear and convincing evidence is defined as

that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a

reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶32} In the second assignment of error, Woodard argues the trial court was not justified in imposing a maximum sentence. Specifically, he argues his sentence is erroneous because his offenses "were clearly not the worst form of [each] offense."

{¶33} As an initial matter, we note that although the trial court imposed maximum prison terms for the majority of Woodard's offenses, it did not impose a maximum sentence. However, even if Woodard had received a maximum sentence, there no longer exists a statutory requirement that the trial court make certain findings before imposing a maximum sentence. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 9.

{¶34} Therefore, we review Woodard's sentence to determine whether it is contrary to law. *Id.*, citing *State v. East*, 8th Dist. Cuyahoga No. 102442, 2015-Ohio-4375.

{¶35} A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *Hinton* at ¶ 10. Trial courts have "full discretion" to impose a sentence within the applicable statutory range. *Id.*, citing *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15. A sentence within the statutory range, made with consideration of the sentencing factors, is "presumptively valid." *Id.*, quoting *Collier* at ¶ 15.

{¶36} Here, Woodard acknowledges that his prison sentence is within the applicable statutory range for each offense and that the trial court noted it had considered the purposes and

principles of felony sentencing and the seriousness and recidivism factors. This court has held that a trial court fulfills its statutory duty by indicating it has considered the relevant sentencing factors. *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 14. Indeed, "the court need not go through each factor on the record _ it is sufficient that the court acknowledges that it has complied with its statutory duty to consider the factors without further elaboration." *Id.*

{¶37} The record clearly demonstrates that Woodard's sentence is within the statutory range and that the trial court considered the statutory sentencing factors. Accordingly, we do not find Woodard's sentence contrary to law.

{¶38} In the fourth assignment of error, Woodard argues the trial court erred in imposing consecutive sentences without making the necessary findings under R.C. 2929.14(C). Woodard further argues the trial court did not engage in the correct analysis of this statute.

{¶39} Under Ohio law, prison terms are to be served concurrently, subject to certain exceptions. R.C. 2929.14(A). A trial court may, in its discretion, order that a defendant consecutively serve multiple prison terms for convictions of multiple offenses, provided the court make certain statutory findings under R.C. 2929.14(C)(4). Specifically, the trial court must find that (1) "consecutive service is necessary to protect the public from future crime or to punish the offender," (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) one of three statutory factors set forth in R.C. 2929.14(C)(4)(a)-(c) applies. *Id.*

{¶40} As to the manner in which the trial court must make these findings, the Ohio Supreme Court has held:

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is the court required to give a talismanic recantation of the words of the statute.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶41}** Here, the trial court stated the following with regard to the required consecutive sentence findings:

> The most dangerous part of [your crimes] is for the rest of our community, that those firearms were not recovered, and the lack of cooperation with that. There are potentially more victims out there with all those rounds of ammunition. It's a serious concern for our community.
>
> Your criminal history is replete with multiple times stealing, assault, robbery, obstructing official business, resisting arrest. You went to prison for robbery, then you come back with these two cases shortly after you are released from prison.
>
> The court finds * * * that consecutive sentences are necessary, also statutory in Count 3[, grand theft,] of [Case No.] 614273. *One single term is not adequate to punish you and protect our community based on the crimes*, the firearms inherent in society now, all the ammunition. *That is not disproportionate, either for your actions.*
>
> Multiple burglaries, breaking into people's homes, invading their sense of safety.
>
> It's also necessary to protect our community and punish you. As I said, *your criminal history shows that consecutive terms are also necessary to protect our public*.

(Emphasis added).

**{¶42}** Woodard argues the trial court's analysis was truncated, and made without regard to the order of the findings as mandated by R.C. 2929.14(C)(4). We disagree. We find that the

trial court's consecutive-sentence analysis was thorough and encompassed each of the three required findings. Further, we find nothing in the language of statute that mandates the trial court make the findings in the order they are listed.

{¶43} Based on the foregoing, we cannot clearly and convincingly find that Woodard's sentence is contrary to law or that the record does not support the trial court's findings under R.C. 2929.14(C)(4).

{¶44} Accordingly, the second and fourth assignments of error are overruled.

Restitution

{¶45} In the third assignment of error, Woodard challenges the trial court's orders of restitution, arguing that the amounts ordered are unsupported by any evidence.

{¶46} This court reviews an order of restitution under an abuse of discretion standard. *State v. Lalain*, 8th Dist. Cuyahoga No. 95857, 2011-Ohio-4813, _ 9. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶47} As an initial matter, we note that since Woodard did not object to the order of restitution or the amounts ordered at his sentencing hearing, he waives all but plain error. *State v. Jarrett*, 8th Dist. Cuyahoga No. 90404, 2008-Ohio-4868, ¶ 14. Under Crim.R. 52(B), "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We invoke plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 93, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶48}** R.C. 2929.18(A)(1) provides for "[r]estitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss."

**{¶49}** The statute further explains:

> If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

**{¶50}** Prior to ordering restitution, a sentencing court must engage in a "due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered." *State v. McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, ¶ 13. The court must determine the amount of restitution to a reasonable degree of certainty and ensure that the amount is supported by competent, credible evidence. *Id*. "'When an award of restitution is not supported by such evidence, it is an abuse of discretion by the court that alters the outcome of the proceeding, thus constituting plain error.'" *Id*., quoting *State v. Peck*, 6th Dist. Sandusky No. S-12-046, 2013-Ohio-4835, _ 21.

**{¶51}** Here, the trial court ordered restitution in the amounts of $12,000 and $3,000 to the homeowners of each of the two Lakewood homes Woodard had burglarized in Case No. CR-17-614273-D. The trial court ordered that these amounts would be payable through the probation department and that Woodard was jointly and severally liable with his codefendants for each of these amounts. Woodard argues that there is no evidence to support the amounts of the two separate restitution orders. We disagree.

{¶52} At the change of plea hearing, the state advised the court that restitution to Woodard's victims was part of the plea agreement in both cases. However, at the sentencing hearing, the state only sought restitution in Case No. CR-17-614273-D.

{¶53} The record demonstrates that the amounts ordered in that case were recommended by the victims. With regard to the $12,000 restitution order to the homeowner of the first Lakewood home burglarized by Woodard, the state advised that the homeowner had "out-of-pocket [expenses of] $12,000." The homeowner was present at sentencing and provided receipts for items stolen and property damage as well as a deduction for the amount paid by insurance.

{¶54} The PSI states that the homeowners of the second Lakewood home burglarized by Woodard desired $3,000 in restitution. These victims stated that Woodard stole jewelry, some with great sentimental value, and $300 in cash from their home. At the sentencing hearing, the state advised the trial court that the homeowners "show[ed the state] documentation [for the $3,000 amount]" earlier that day.

{¶55} The record demonstrates that the trial court based the restitution orders on amounts specifically recommended by each of the victims. As discussed above, R.C. 2929.18(A)(1) permits the trial court to "base the amount of restitution it orders on an amount recommended by the victim" and only requires the trial court hold a hearing on the amount of restitution "if the offender, victim, or survivor disputes the amount." The record reflects that neither Woodard nor his victims disputed the amount of the restitution orders.

{¶56} Based on the foregoing, we do not find the trial court abused its discretion in ordering Woodard pay restitution to the victims in this case. Having found no abuse of

discretion, we find no plain error. *McLaurin,* 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, at _ 21.

{¶57} Accordingly, the third assignment of error is overruled.

{¶58} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
PATRICIA ANN BLACKMON, J., CONCUR.